**CARROLLTON–FARMERS BRANCH INDEPENDENT SCHOOL DISTRICT, Appellant,**

v.

**JPD, INC., Appellee.**

**No. 05–03–01215–CV.**

Court of Appeals of Texas, Dallas.

May 25, 2005.

Daniel K. Bearden, Dallas, for appellant.

G. Walter McCool, Rick L. Duncan, Brusniak, McCool & Blackwell, P.C., John Brusniak, Jr., Brusniak, Clement, Harrison & McCool, P.C., Dallas, for appellee.

Before Justices WRIGHT, FRANCIS, and LANG–MIERS.

## OPINION

Opinion by Justice Wright.

This appeal stems from a suit to collect delinquent taxes filed by the City of Irving (City).[1] Subsequently, Carrollton–Farmers Branch Independent School District (CFBISD) intervened in this lawsuit on its own behalf as a plaintiff. The trial court entered judgment in favor of appellee JPD, Inc. on its counterclaim, and CFBISD appealed.[2] In two points of er-

---

1. Chapter 33 of the tax code provides for a taxing unit to sue for delinquent taxes. *See* Tex. Tax Code Ann. § 33.41 (Vernon 2001 & 2004–05 Supp.).

2. The trial court ordered the City of Irving to pay JPD a refund of the excess penalties and interest received from JPD by the City. The City of Irving is not a party to this appeal.

ror, CFBISD contends the trial court erred in: (1) concluding that a refund of taxes pursuant to section 42.43(a) [3] of the tax code includes a refund of penalties and interest; and (2) awarding JPD its attorney's fees. We sustain CFBISD's second point of error. We affirm that portion of the trial court's judgment ordering CFBISD to refund to JPD the penalties and interest paid on the incorrect appraised value. We reverse the trial court's award of attorney's fees and render judgment that JPD take nothing on its claim for attorney's fees.

## Background

For tax year 1999, the Dallas County Appraisal District (DCAD) appraised JPD's property at $2,992,780.00. JPD protested this appraisal with the Dallas County Appraisal Review Board. Dissatisfied with its administrative protest, JPD filed a lawsuit on October 2, 2000 against DCAD and the appraisal review board seeking judicial review.

Seven days after JPD filed its protest lawsuit, the City sued JPD for delinquent taxes pursuant to chapter 33 of the tax code. CFBISD intervened as a plaintiff in the delinquency lawsuit. JPD filed an answer. Nothing further occurred in this lawsuit until JPD filed its counterclaim on December 20, 2001.

Meanwhile, both the City and CFBISD persisted in their efforts to collect taxes from JPD, obtaining several tax warrants. To avoid execution of the tax warrants, JPD made partial payments of the taxes, penalties, and interest assessed on the original appraisal. CFBISD and the City collected $73,463.80 from JPD before the appraised value was finally determined to be over two million dollars less than the original appraised value.

On September 4, 2001, JPD entered into an agreed judgment with DCAD and the appraisal review board lowering the appraised value of JPD's property from $2,992,780.00 to $186,300.00. Neither party appealed this judgment. Once the property's appraised value was reduced, CFBISD's property tax on the property was reduced from $48,294.49 to $3,006.32. By the time the agreed judgment was entered reducing the property's appraised value, JPD had paid CFBISD $54,104.85 in taxes, penalties, and interest. CFBISD refunded $31,046.24 to JPD. CFBISD did not refund the penalties and interest JPD paid on the incorrect, higher appraised value of $2,992,780.00.

JPD filed a counterclaim in the delinquency suit seeking a refund of the portion of the penalties and interest calculated on the incorrect appraised value. This case was tried to the court on stipulated facts. The trial court granted judgment in favor of JPD ordering CFBISD and the City to refund JPD the difference between the penalties and interest paid and the penalties and interest due based on the current tax roll. The trial court also awarded JPD its attorney's fees. CFBISD timely appealed.

## Penalties and Interest

In its first issue, CFBISD contends the trial court erred in concluding that the tax code is ambiguous as to whether the term "taxes" as used in reference to any refund due under section 42.43(a) of the tax code includes penalties and interest and erred in resolving that ambiguity in favor of JPD.

■ In a case tried to the court on stipulated facts, the reviewing court generally may not find any facts not conforming to the agreed statement, unless the agree-

---

**3.** *See* Tex. Tax Code Ann. § 42.43(a) (Vernon 2001).

ment provides otherwise. *State Bar v. Faubion,* 821 S.W.2d 203, 205 (Tex.App.-Houston [14th Dist.] 1991, writ denied). Accordingly, we will review only the correctness of the trial court's application of law to the stipulated facts, and will not infer or find any facts absent from the parties' stipulation. *See Rabinowitz v. Cadle Co. II, Inc.,* 993 S.W.2d 796, 797 (Tex. App.-Dallas 1999, pet. denied).

A property owner who disagrees with an appraisal has the right to an administrative protest as provided in chapter 41 of the tax code. *See* TEX. TAX CODE ANN. § 41.41(a) (Vernon 2001). If the property owner is dissatisfied with the determination of his protest, he has the right to judicial review as provided in chapter 42 of the tax code. *See* TEX. TAX CODE ANN. § 42.01 (Vernon 2001). A property's appraised value may be determined only in a chapter 42 suit brought by the taxpayer. TEX. TAX CODE ANN. § 42.09 (Vernon 2001). Once a chapter 42 review is determined, the chief appraiser must correct the appraisal roll and other appropriate records to reflect the final determination, and the assessor for each taxing unit must, in turn, correct its tax roll. TEX. TAX CODE ANN. § 42.41(a) & (b) (Vernon Supp. 2004–05).

A taxing unit's legal right to taxes claimed in a chapter 33 lawsuit depends upon the final determination of the appraised value of the property. Because a taxpayer cannot defend a lawsuit for delinquent taxes on the ground that the appraised value of the property is incorrect, it necessarily follows that judgment in the chapter 33 delinquency lawsuit be deferred until the chapter 42 appraisal appeal is resolved. *See New v. Dallas Appraisal Review Bd.,* 734 S.W.2d 712, 717 (Tex. App.-Dallas 1987, writ denied); *Valero Transmission Co. v. San Marcos Consolidated Indep. Sch. Dist.,* 770 S.W.2d 648, 651 (Tex.App.-Austin 1989, writ denied). The amount of delinquent taxes owed, including penalties and interest, cannot be determined until the valuation of the property is finally determined. *See New,* 734 S.W.2d at 717.

In a suit for delinquent taxes, a taxing unit's recovery of taxes, penalties, and interest is assessed from the current tax roll.[4] If a taxpayer has filed a chapter 42 lawsuit and the appraised value is subsequently lowered, the tax roll is corrected. The corrected tax roll becomes the current tax roll for purposes of a lawsuit for delinquent taxes. *See* TEX. TAX CODE ANN. § 42.41(a) & (b) (Vernon Supp. 2004–05). Accordingly, a taxing unit is entitled to penalties and interest only on the corrected amount.

■ JPD's chapter 42 suit against the appraisal district resulted in a final agreed judgment that neither party appealed. Following the conclusion of its chapter 42 lawsuit, JPD came back into the chapter 33 delinquent tax lawsuit with the corrected tax roll and counterclaimed for a refund of the portion of the penalties and interest it had already paid on the erroneous appraised value. In its counterclaim, JPD states that a final judgment had been entered in its protest suit, resulting in a lower appraised value of its property.

---

4. Section 33.47(a) provides:
   (a) In a suit to collect a delinquent tax, the taxing unit's current tax roll and delinquent tax roll or certified copies of the entries showing the property and the amount of the tax and penalties imposed and interest accrued constitute prima facie evidence that each person charged with a duty relating to

the imposition of the tax has complied with all requirements of law and that the amount of tax alleged to be delinquent against the property and the amount of penalties and interest due on that tax as listed are the correct amounts.
TEX. TAX CODE ANN. § 33.47(a) (Vernon 2001).

Based on the corrected tax roll, JPD sought a refund of the excessive penalties and interest previously paid. The parties made numerous stipulations, including: (1) the value of JPD's property was $186,300.00 as finally determined in JPD's chapter 42 lawsuit; (2) the appraisal district corrected its tax rolls to reflect the lower value; and (3) the amount of penalties and interest calculated on the corrected appraised value in accordance with chapter 33.

The only issue before the trial court in this suit was the proper amount of penalties and interest due based on the current and corrected tax roll as stipulated by the parties.[5] The evidence before the trial court established that JPD paid penalties and interest in excess of what CFBISD was entitled to in its delinquency lawsuit. Thus, in the tax delinquency lawsuit that is currently before us, the trial court correctly held that JPD was obligated to pay penalties and interest only upon the corrected appraisal value.

It is true that the parties, both in the trial court and in this Court, primarily focused their arguments on the meaning of the term "taxes" as used in section 42.43(a). However, this Court's disposition is grounded in an argument made to the trial court. JPD argued at trial that penalties and interest cannot be calculated until a property's appraised value is finally determined.[6] Once the appraised value is finally determined, the tax rolls are corrected and the current tax roll is used to calculate penalties and interest recoverable in a delinquency lawsuit under chapter 33. Thus, even assuming, without deciding, the trial court erred in its determination that "taxes" is ambiguous as used in section 42.43(a), it does not mandate a different result because the trial court's judgment is correct under another legal theory. *See Custom Leasing, Inc. v. Texas Bank & Trust Co. of Dallas*, 516 S.W.2d 138, 142 (Tex.1974) (duty of the appellate court to sustain trial court's judgment if it is correct on any theory of law applicable to the case); *Lone Star Salt Water Disposal Co. v. R.R. Comm'n*, 800 S.W.2d 924, 931 (Tex. App.-Austin 1990, no writ) (stating appellate courts are under duty to uphold correct lower court judgment on any legal theory, even if lower court has relied on incorrect legal theory and even if lower court has given incorrect reason for its judgment). Based on the current tax roll and the parties' stipulations, the trial court properly awarded JPD a refund of penalties and interest in excess of those calculated on the current tax roll.

### Attorney's Fees

■ In its counterclaim, JPD also requested attorney's fees incurred as a result of CFBISD's failure to pay the amount of tax refund due. Chapter 33 does not provide for a taxpayer to recover attorney's fees in a delinquency suit. At

---

**5.** The dissent contends that neither party appeals the issues involved in the chapter 33 lawsuit. To the contrary, the amount of penalties and interest owed to a taxing unit is a key issue in a chapter 33 lawsuit. Chapter 33 provides the relief JPD requested in its counterclaim. Consequently, we have analyzed this appeal under chapter 33.

**6.** At trial, JPD argued that in a delinquent tax suit, a property's appraised value must first be finally determined before calculating penalties and interest recoverable in a tax delinquency suit:

> You look at the *New* case which says you can't calculate those penalties, interest, and attorney's fees unless you have an assessed value, an appraised value that's ultimately decided to be the market value. So you can't—you can't calculate penalties, interest, and attorney's fees until you have a Constitutional mandated market value. And in this case, there wasn't until the judgment came down.

trial, JPD's attorney stated that JPD was requesting attorney's fees pursuant to section 42.43(d) of the tax code. Pursuant to section 42.43(d), a property owner who prevails in a suit to compel a refund required by 42.43 that is filed *on or after* the 180th day after the appraisal roll is corrected is entitled to attorney's fees. Tex. Tax Code Ann. § 42.43(d) (Vernon 2001). The appraisal district corrected the tax rolls on September 26, 2001. JPD filed its counterclaim against CFBISD on December 20, 2001, a little more than three months *before* the 180th day *after* the correction to the tax rolls. Thus, even if JPD's counterclaim in the delinquency lawsuit is viewed as a suit to compel within the meaning of section 42.43(d), JPD is not entitled to its attorney's fees. For these reasons, we conclude the trial court erred in awarding attorney's fees to JPD.

Accordingly, we affirm that portion of the trial court's judgment ordering CFBISD to pay a refund of penalties and interest in the amount of $14,530.78 plus interest to JPD. We reverse the portion of the trial court's judgment awarding attorney's fees to JPD and render judgment that JPD take nothing on its claim for attorney's fees.

Dissenting Opinion by Justice LANG–MIERS.

LANG–MIERS, J. dissenting.

In affirming the trial court's judgment ordering a partial refund of penalties and interest, the majority decides this appeal under the provisions of chapter 33 of the property tax code. I disagree that chapter 33 applies to this appeal because chapter 42 was the basis for JPD's counterclaim, and section 42.43(a) specifically addresses what the legislature intended to happen in exactly this situation; chapter 33 does not. Because I would decide this appeal under chapter 42 of the code and reverse the trial court's judgment, I respectfully dissent.

As noted by the majority, this case began as a lawsuit by the City against JPD to collect delinquent taxes under chapter 33 of the property tax code. CFBISD intervened as a plaintiff also seeking to collect delinquent taxes owed by JPD. In a separate lawsuit, JPD sought judicial review under chapter 42 of DCAD's appraisal of its property value and prevailed. The City and CFBISD were not parties to JPD's chapter 42 lawsuit. After the appraisal was lowered, CFBISD refunded the difference between the taxes already paid and the taxes owed on the lower appraised value but did not refund any portion of the penalties or interest that JPD had paid. The City did not make any refund to JPD.

When these taxing authorities did not refund any of the interest and penalties it had paid, JPD filed a counterclaim in the chapter 33 lawsuit for the refund it believed it was due under section 42.43(a), which provides:

> If the final determination of an appeal that decreases a property owner's tax liability occurs after the property owner has paid his taxes, the taxing unit shall refund to the property owner the difference between the amount of taxes paid and amount of taxes for which the property owner is liable.

Tex. Tax Code Ann. § 42.43(a) (Vernon 2001). When the case was called to trial, only the issue of the refund under chapter 42 remained.[1]

---

1. The parties advised the trial court that the delinquency issues had been settled and no claims remained against JPD. None of the parties has appealed any of the issues involved in the chapter 33 delinquency lawsuit.

The trial court granted judgment in JPD's favor, awarding it a refund of the difference between the taxes, penalties, and interest that JPD paid and the taxes, penalties, and interest due on the lower appraised value, interest on that amount, and its attorney's fees. The trial court also entered findings of fact and conclusions of law, which included the following:

1. The Texas Property Tax Code is ambiguous as to whether the term "taxes" as used in connection with any refunds due under section 42.43(a), includes all penalties and interest.

2. Any ambiguity arising under the Texas Property Tax Code must be resolved in favor of the taxpayer.

CFBISD appeals the trial court's conclusions, arguing the language of section 42.43(a) of the property tax code requiring a refund of "taxes" means a refund of base tax only, not a refund of base tax as well as penalties and interest. I agree with CFBISD.

## APPLICABLE LAW

A trial court's conclusions of law are reviewed de novo. *Richardson Indep. Sch. Dist. v. GE Capital Corp.*, 58 S.W.3d 290, 293 (Tex.App.-Dallas 2001, no pet.). Statutory construction is a question of law. *Bragg v. Edwards Aquifer Auth.*, 71 S.W.3d 729, 734 (Tex.2002); *G.E. Capital Corp.*, 58 S.W.3d at 293. The reviewing court must ascertain and give effect to the legislature's intent for the provision it is construing. *See Fleming Foods v. Rylander*, 6 S.W.3d 278, 284 (Tex.1999); *Union Bankers Ins. Co. v. Shelton*, 889 S.W.2d 278, 280 (Tex.1994); *Calvert v. Tex. Pipe Line Co.*, 517 S.W.2d 777, 780 (Tex.1974). The legislature's intent is determined by reading the language used in the particular statute and construing the statute in its entirety. *See In re Bay Area Citizens*

*Against Lawsuit Abuse*, 982 S.W.2d 371, 380 (Tex.1998); *Taylor v. Firemen's & Policemen's Civil Serv. Comm'n*, 616 S.W.2d 187, 190 (Tex.1981). The starting point is to look at the plain and common meaning of the statute's words, viewing its terms in context and giving them full effect. *Liberty Mut. Ins. Co. v. Garrison Contractors, Inc.*, 966 S.W.2d 482, 484 (Tex.1998). If the language is unambiguous, the statute will be interpreted according to its plain meaning. *State ex rel. State Dep't of Highways & Pub. Transp. v. Gonzalez*, 82 S.W.3d 322, 327 (Tex.2002). The reviewing court reads every word, phrase, and expression in a statute as if it were deliberately chosen and presumes the words excluded from the statute are excluded on purpose. *Gables Realty Ltd. P'ship v. Travis Cent. Appraisal Dist.*, 81 S.W.3d 869, 873 (Tex.App.-Austin 2002, pet. denied); *see City of Austin v. Quick*, 930 S.W.2d 678, 687 (Tex.App.-Austin 1996) (citing *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex.1981), *aff'd*, 7 S.W.3d 109 (Tex.1999)); *see also* 2A NORMAN J. SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 47.25 (6th ed. 2000) (stating there is generally an inference that omissions from statute are intentional). Rules of construction or other extrinsic aids cannot be used to create ambiguity when the purpose of a legislative enactment is obvious from the language of the law itself. *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865 (Tex.1999).

The Code Construction Act lists factors a court may consider in construing a statute, whether or not its language is ambiguous: (1) the statute's objectives; (2) the circumstances under which the statute was enacted; (3) the statute's legislative history; (4) common law, former law, and similar provisions; (5) the consequences of the statutory construction; (6) administrative agencies' construction of the statute; and

(7) the title, preamble, and any emergency provisions. TEX. GOV'T CODE ANN. § 311.023(1)-(7) (Vernon 2005); *In re Canales,* 52 S.W.3d 698, 702 (Tex.2001). The reviewing court must presume the legislature intended a just and reasonable result and favored public over private interests. TEX. GOV'T CODE ANN. § 311.021(3), (5); *Helena Chem. Co. v. Wilkins,* 47 S.W.3d 486, 493 (Tex.2001).

### CFBISD's Position

CFBISD contends that section 42.43(a) is clear and unambiguous, should be given its common and ordinary meaning, and mandates only a refund of "taxes" because it does not state that the refund includes penalties and interest. *See* TEX. TAX CODE ANN. § 42.43(a). It notes that, although the statutes do not define the words, the statutes do explain how to calculate each of them and that the different methods of calculation demonstrate the terms are intended to mean different things.

CFBISD cites other sections of the property tax code to show that the word "taxes" does not also include "penalties" and "interest." One such provision is section 26.15(f), which states that "[i]f a correction decreases the tax liability of a property owner after the owner has paid the tax, the taxing unit shall refund to the property owner the difference between the tax paid and the tax legally due, except as provided by Section 25.25(n)." TEX. TAX CODE ANN. § 26.15(f). And section 25.25(n) states that "[a]fter a chief appraiser certifies a change under Subsection (b) that corrects multiple appraisals of a property, the liability of a taxing unit for a refund of taxes under Section 26.15(f)

and any penalty or interest on those taxes, is limited to taxes paid for the tax year in which the appraisal roll is changed and the four tax years preceding that year." TEX. TAX CODE ANN. § 25.25(n). CFBISD also refers to section 32.01(a) of the property tax code that provides for a lien which will "secure payment of all taxes, penalties and interest ultimately imposed for the year on the property"[2] and section 42.08(b), which states a property owner must pay at least the amount of taxes owed on the undisputed value of the property to be allowed to appeal the property's appraised value. *See* TEX. TAX CODE ANN. §§ 32.01(a), 42.08(b). CFBISD argues the language in these sections demonstrates the legislature's intent that the word "taxes" in section 42.43(a) means only the base tax, because the legislature adds the words "penalties" and "interest" when it intends those charges to be included.

### JPD's Position

JPD argues that section 42.43(a) is ambiguous and that the word "taxes" should be construed to include penalties and interest. JPD cites us to other provisions of the property tax code it contends demonstrate that "taxes" in the section at issue is not intended to be limited to base taxes. It argues that the existence of different methods for calculating taxes, penalties, and interest does not mean the refund provided by section 42.43 does not include penalties and interest. For example, under section 31.11, a taxpayer who has voluntarily paid the property tax may apply for a refund of an overpayment or erroneous payment of "taxes." TEX. TAX CODE ANN. § 31.11 (Vernon Supp. 2004–05). JPD reasons, under CFBISD's definition

---

**2.** Additionally, CFBISD cites us to section 31.01 of the property tax code, which refers to the terms "tax" and "penalty" as distinct terms, TEX. TAX CODE ANN. § 31.01; section 31.02(a) of the property tax code, which re-

fers to "taxes" and "tax bill," TEX. TAX CODE ANN. § 31.02(a); and section 33.01 of the property tax code, which explains the penalties and interest due on delinquent taxes, TEX. TAX CODE ANN. § 33.01.

of "taxes," a taxpayer would never get a refund of an erroneous payment of penalties and interest under this section if "taxes" means only base tax. It also contends that CFBISD misinterprets sections 26.15(g) and 25.25(n). It argues that if penalties and interest were not intended to be included as part of the refund of "taxes" under those sections, there would be no need to limit the liability for those refund payments to four years. *See* TEX. TAX CODE ANN. §§ 25.25(n), 26.15(g). JPD also refers to section 31.10, which requires the tax collector to prepare a written report of all "taxes collected" and to deposit "all taxes collected." *See* TEX. TAX CODE ANN. § 31.10. It argues that under CFBISD's definition of "taxes," the tax collector would be responsible for reporting and depositing only the base tax and not the penalties and interest collected. Finally, JPD argues that if the taxing authority does not also have to refund penalties and interest, it will be awarded a disproportionate amount of attorney's fees under section 6.30, which sets the compensation rate for attorneys hired to collect delinquent property taxes at twenty percent of the delinquent taxes, penalties, and interest. *See* TEX. TAX CODE ANN. § 6.30 (Vernon 2001).[3] If the refund does not include penalties and interest, JPD argues that attorney's fees will be calculated on that higher amount even though the taxes are substantially reduced and the resulting penalties and interest on that amount would be substantially lower.

JPD contends that taxing statutes are to be construed strictly against the taxing authority and liberally for the taxpayer, and that to interpret the statute otherwise will give the taxing authority a windfall—if the appraisal had been correct initially and those taxes had not been paid timely, JPD would have been liable for penalties and interest only on the lower, unpaid tax. It argues that CFBISD's interpretation of the statute is contrary to public policy and that it circumvents the taxpayer's rights under the Texas Constitution because the taxpayer ends up paying penalties and interest on an appraised value in excess of the market value.

## DISCUSSION

The language in section 42.43(a) is straightforward: it provides for a refund of taxes and does not provide for a refund of penalties and interest. As a result, based on a review of the plain language of the statute, I conclude it is not ambiguous. Being mindful that if the language itself is clear and unambiguous, rules of construction or extrinsic aids should not be used to conclude it is ambiguous. *Fitzgerald*, 996 S.W.2d at 865.

This conclusion is supported by a review of other sections of the property tax code. For example, the property tax code provides specific and different methods for calculating taxes, penalties, and interest.[4] Because each is calculated differently, it is reasonable to conclude the legislature intended the words to have different meanings in the property tax code. Additionally, although the words are not defined terms in the property tax code, the word "tax" is defined in section 32.07, entitled "Personal Liability for Tax," where it states:

(g) In this section:

---

3. Section 6.30 uses the words "tax," "penalty," and "interest" separately.

4. *See* TEX. TAX CODE ANN. §§ 26.09 (calculation of taxes), 33.01 (calculation of penalties and interest), 33.07 (calculation of additional penalty for collection costs for taxes due before June 1).

(2) "Tax" includes any ad valorem tax or money subject to the provisions of Subsection (d), including the penalty and interest computed by reference to the amount of tax or money.

TEX. TAX CODE ANN. § 32.07(g). The fact that the legislature specifically defined taxes to also include penalties and interest for purposes of this section suggests that the legislature did not intend for taxes to have that same meaning in other sections.

As each of the parties has pointed out, in some sections the word "taxes" is used alone and in others the words "penalties" and "interest" are also used.[5] To conclude

5. For example, section 31.02 (uses the words "taxes," "penalty," and "interest" in discussing delinquency date for active military personnel serving in the Persian Gulf); section 31.031 (provides a method by which a disabled person may pay property "taxes" in installments without "penalty" or "interest"); section 31.04 (discussing "penalties" and "interest" calculated on delinquent property "taxes" when the delinquency date has been postponed); section 31.05 (authorizing discounts on "taxes"); section 31.071 (authorizing conditional payments of "taxes" before the delinquency date when filing a challenge or protest); section 31.111 (authorizing refund of duplicate payments of "taxes"); section 31.12 (requiring the taxing unit to pay "interest" on refunds of "taxes" not made within a certain time period); section 32.01 (providing that a tax lien attaches to property on January 1 of each year to secure payment of all "taxes, penalties, and interest" imposed on the property); section 32.07 (imposing personal liability for "taxes," "penalties" and "interest" in which "tax" is defined to include "penalty" and "interest" for purposes of this section); section 33.01 (discussing "penalties" and "interest" which accrue on delinquent "tax"); section 33.011 (setting out when "penalties" and "interest" may be waived); section 33.02 (providing for the payment of delinquent "taxes," "penalties," and "interest" in installments); section 33.06 (authorizing elderly and disabled property owners to defer or abate a suit to collect delinquent "tax" but does not eliminate accrued "penalties" and "interest"); section 33.065 (authorizing a taxpayer to request that collection of delinquent "taxes" be deferred on the portion of the property's value that exceeds a certain amount, but only if the "taxes" that do not exceed that amount are not delinquent and providing that "interest," but not "penalties," continues to accrue during the abatement period); section 33.08 (calculation of "additional penalty" for attorney's fees for taxes due on or after June 1); section 33.42 (in a suit to foreclose a lien securing payment of "taxes," if tax becomes delinquent before judgment is entered, judgment must include the "tax" and any "penalty and interest"); section 33.43 (petition to initiate a suit to collect delinquent property tax should allege the amount of "tax" due and the amount of "penalties, interest, and costs" authorized by law and that taxing unit asserts a lien to secure the payment of all "taxes, penalties, interest and costs"); section 33.46 (allowing for the partition of property when property is owned by two or more people and one has paid the "taxes, penalties, interest, and costs" apportioned to him); section 33.48 (authorizing a taxing unit to recover attorney's fees of fifteen percent of the total amount of "taxes, penalties, and interest" due); section 33.52 (setting out the method by which the "taxes," "penalties," and "interest" may be included in a judgment); section 33.93 (providing that a tax warrant directs that property subject to the warrant may be seized as payment of "taxes, penalties, and interest" owing on the property); section 34.01 (authorizing sale of property seized pursuant to foreclosure of tax lien and requiring a calculation of the "taxes, penalties and interest" due under the judgment); section 34.02(b)(3) (applying proceeds of tax sale against "taxes, penalties, and interest" due under the judgment); section 34.04 (referring to "taxes," "penalties," and "interest" separately in allocating who may claim a right to excess proceeds from a tax sale); section 41.44 (property owner entitled to a hearing and determination of his protest if the protest was filed prior to "taxes" becoming delinquent); section 42.29 (calculation of attorney's fees as a percentage of "tax liability" if property owner prevails in an appeal of appraised value); section 42.42(c) ("penalties" and "interest" due on tax in supplemental tax bill calculated as if tax became delinquent on the original delinquency date when taxpayer paid a portion of taxes due before delinquency date); section 42.42(d) ("interest" due on tax included in supplemental tax bill calculated as if tax became delinquent on

the word "taxes" in this section is ambiguous and that it actually means "taxes," "penalties," and "interest," is to effectively determine that the words "penalties" and "interest" are meaningless and surplusage in those sections where all three words are used together. If the legislature had intended the refund of taxes provided for in section 42.43(a) to include "penalties and interest," it would have said so, as it did with section 32.07(g)(2).

In making this determination, it is helpful to look at the purpose of the statute. The Texas Property Tax Code was enacted effective January 1, 1982 and "contain[ed] a unified scheme for obtaining administrative and judicial review of property tax appraisals." Farley P. Katz & Charles J. Muller III, *Procedural Rights and Remedies Under the Texas Property Tax Code—A Guide to the Code, Recent Amendments, and Developing Case Law*, 18 St. Mary's L.J. 1209, 1210 (1986). A perception existed that, prior to passage of the code, a number of presumptions were created by the courts to protect the regularity of public revenues. *Valero Transmission Co. v. Hays Consol. Indep. Sch. Dist.*, 704 S.W.2d 857, 861 (Tex.App.-Austin 1985, writ ref'd n.r.e.). The property tax code procedure balances the taxpayer's due process rights with the need to resolve protests expeditiously; its administrative and judicial review provisions are mandatory and exclusive. *Valero S. Tex. Processing Co. v. Starr County Appraisal Dist.*, 954 S.W.2d 863, 865 (Tex.App.-San Antonio 1997, pet. denied).

Additional evidence of the statute's purpose is found in *Valero Transmission Co.*, 704 S.W.2d at 860 n. 1, where the court noted:

original delinquency date when property owner did not pay any portion of taxes imposed on the property because the court found that

The new Code concurrently provides for an uninterrupted flow of tax revenue, as evidenced by its provisions for supplemental tax bills, corrected tax bills, and refunds following the administrative-judicial review proceedings, whether the taxpayer's protest ends with the decision of the appraisal review board, with the judgment of the district court, or with the judgment of an appellate court.[citations omitted] This implies in the strongest terms that an imposed tax shall be paid, *as imposed* by the taxing unit and *as evidenced by a tax bill*, in the ordinary course—that is to say, by February 1 of the tax year—subject to the taxpayer's right of refund on the determination of his protest or the taxing unit's right of additional tax should it prevail in its administrative "challenge," whether in the appraisal review board or on judicial review of that board's determination.

The property tax code sections create a comprehensive method for a taxpayer to challenge the property valuation and the resulting tax while still assuring that the government has a constant source of revenue. *See Valero S. Tex. Processing Co.*, 954 S.W.2d at 865; *Valero Transmission Co. v. San Marcos Consol. Indep. Sch. Dist.*, 770 S.W.2d 648, 650 n. 2 (Tex.App.-Austin 1989, writ denied) (noting that section 31.071 has same purpose as section 42.08, which is to secure uninterrupted revenue for taxing authority while allowing property owner to protest appraisal).

The public interest in preserving an uninterrupted revenue stream is further demonstrated by section 42.08 of the property tax code, entitled, "Forfeiture of Remedy for Nonpayment of Taxes." It provides that the pendency of a suit for ju-

payment would constitute an unreasonable restraint on the taxpayer's right of access to courts).

dicial review of a decision of the appraisal board does not affect the date taxes become delinquent and that a property owner forfeits the right to a final determination of an appeal from an order of the appraisal review board unless the property owner pays the lesser of:

1. The amount of taxes due on the portion of the taxable value of the property that is not in dispute, or
2. The amount of taxes due on the property under the order from which the appeal is taken.

TEX. TAX CODE ANN. § 42.08(b) (Vernon 2001).

The property tax code also allows the property owner to continue the appeal without prepayment of the taxes by filing with the court an oath of inability to pay the taxes at issue, after which the court gives notice, conducts a hearing, and a makes a finding that prepayment would constitute an unreasonable restraint on the party's right of access to the courts. TEX. TAX CODE ANN. § 42.08(d) (Vernon 2001). The legislature emphasized the importance of compliance with this section by also providing that, "[o]n the motion of a party ... [i]f the court determines that the property owner has not substantially complied with this section, the court shall dismiss the pending action." *Id.* If the property owner complies with this section, the delinquency date for any additional amount of taxes due on the property is determined by section 42.42(c), and that additional amount is not delinquent before that date. *See Jefferson County v. Clark Ref. & Mktg., Inc.,* 7 S.W.3d 324, 326 (Tex.App.-Beaumont 1999, no pet.). If the tax was overpaid, the taxpayer is entitled to a refund of the difference between the amount of taxes paid and the amount of taxes for which the property owner is liable pursuant to section 42.43.

As previously noted, no specific provision exists for a refund of penalties and interest after there has been a final determination on appeal that reduces the tax liability. This makes sense because the statutory scheme establishes a method to avoid paying penalties and interest on the higher and contested appraised value: comply with section 42.08, either by paying all or a portion of the taxes due or by obtaining a ruling from the court that it had substantially complied with that section.[6] It does not envision that a taxpayer appealing a valuation will accrue or pay penalties or interest on the taxes that are due because the statute provides no right to appeal if the taxes are not paid pursuant to section 42.08. And the taxpayer continues to accrue penalties and interest on the unpaid taxes if it does not follow the procedures in section 42.08.

As a result, neither the language in the statute nor a review of the statutory purpose suggests that the legislature meant something other than what it said in this section. Interpreting section 42.43(a) to require a refund of taxes as well as penalties and interest would stray from the plain language of the statute. *Fitzgerald,* 996 S.W.2d at 866 ("[W]hen we stray from the plain language of a statute, we risk encroaching on the Legislature's function to decide what the law should be."). Conversely, construing the section to mean that only base taxes overpaid are refunded, and not penalties and interest, maintains the integrity of the process put in place to assure a continuing revenue stream is protected.[7]

---

6. JPD contends that because its lawsuit against DCAD was not dismissed, JPD should be deemed to have complied with § 42.08. However, that issue is not before the Court. TEX.R.APP. P. 25.1(c).

7. CFBISD cites to *Richardson Independent School District v. GE Capital Corp.,* 58 S.W.3d

Additionally, JPD argues it would be unfair and against public policy for CFBISD to retain the penalties and interest assessed on the original appraised value. While this may seem a harsh result, it is a result JPD could have avoided by complying with the statute. It is not the role of the judiciary to add words to an unambiguous statute to avoid what is perceived to be an unfair or unjust result. *See Smith v. Brooks,* 825 S.W.2d 208, 211 (Tex.App.-Texarkana 1992, no writ) (court may not amend a statute by adding provisions under the guise of construction no matter how desirable the provisions might seem); *Robinson v. Steak and Ale,* 607 S.W.2d 286, 288 (Tex.Civ.App.-Texarkana 1980, no writ) (courts have no authority to enlarge a statute to avoid what they consider an inequitable or unwise result).

JPD also argues that CFBISD's interpretation of "taxes" results in a violation of JPD's rights under the Texas Constitution that property will be taxed in proportion to its value and that it will never be assessed taxes at a greater value than its fair cash market value. TEX. CONST. art. VIII, §§ 1(b), 20. Failure to refund penalties and interest in this case, JPD contends, is a deprivation of its property without due process. *See* TEX. CONST. art. I, § 19. However, JPD admits that the property tax code procedures accord due process to a taxpayer in the determination of the market value of the taxpayer's property. When a taxpayer follows this statutory procedure to contest the value assigned and resulting taxes assessed, the taxpayer's rights under the Texas Constitution are protected. Although JPD argues it followed that procedure, it is undisputed that JPD failed to pay the tax when due or seek a court ruling that it was unable to pay the tax. *See* TEX. TAX CODE ANN. § 42.08. JPD cannot now complain that the consequences of its failure to follow the procedures available, as opposed to the absence of procedures, creates an unconstitutional deprivation of property without due process.[8]

For these reasons, I cannot conclude the statute is ambiguous or that it mandates a

---

290 (Tex.App.-Dallas 2001, no pet.), where the property owner challenged the appraised value of the property but did not pay the taxes before the delinquency date. Ultimately, the valuation and taxes on the property were reduced and a new tax bill was sent out. The taxpayer sought a waiver of penalties and interest and a determination that the delinquency date for the taxes accrued only from the time the new tax bill was sent out. We held that section 26.15(d) of the property tax code did not nullify the effect of and did not set aside all penalties and interest applicable to nonpayment of the original tax bill. We reasoned that if the legislature had intended such an effect, it would have said so. CFBISD argues the same analysis applies here. JPD argues *Richardson* supports its position because in that case we held that if the legislature had intended a corrected tax bill to set aside all penalties and interest, it would have said so, which JPD contends means that some penalties and interest—the penalties and interest assessed on the wrong valuation—should be set aside. *Richardson* is

not helpful for this analysis because it determined the delinquency date for purposes of calculating penalties and interest, an issue not involved here, and did not interpret sections 42.43 and 42.08.

8. JPD does not specify whether it claims it has been deprived of substantive or procedural due process. JPD concedes the property tax code provides "due process." To show a substantive due process violation, JPD must show CFBISD deprived JPD of its property in a capricious and arbitrary manner. *See City of Lubbock v. Corbin,* 942 S.W.2d 14, 21 (Tex. App.-Amarillo 1996, no pet.). JPD has not done this. Procedural due process requires notice and an opportunity to be heard. *See Cohen v. City of Houston,* 185 S.W.2d 450, 452 (Tex.Civ.App.-Galveston 1945, no writ). JPD cannot complain that it has been deprived of its "day in court" because JPD has been provided even more notice and opportunity to be heard than is authorized under the property tax code.

refund of the difference between penalties, additional penalties, and interest paid based on the initial appraisal and the amounts due based on the lowered appraisal. I would reverse the judgment against CFBISD and render that JPD take nothing in its claim against CFBISD. I agree with the majority's disposition of the issue of attorney's fees. However, because the majority decides this appeal under chapter 33 instead of chapter 42 of the property tax code, I respectfully dissent.