# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-12-00515-CV

**Susan Combs, Comptroller of Public Accounts of the State of Texas; and Greg Abbott, Attorney General of the State of Texas, Appellants**

**v.**

**Newpark Resources, Inc., Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT NO. D-1-GN-11-002205, HONORABLE TIM SULAK, JUDGE PRESIDING**

## CONCURRING OPINION

Although I concur in the judgment, I write separately because I believe the franchise-tax statute obligates us, as a threshold matter, to calculate Newpark's total revenue. In order to do that, it is necessary that we address whether Newpark's flow-through payments to subcontractors should be excluded from total revenue. *See* Tex. Tax Code § 171.1011(g)(3) (specifying that "taxable entity *shall exclude from its total revenue*" funds burdened by contractual obligation to be "distributed to other entities"); *id.* § 171.1011(j) (prohibiting funds excluded from total revenue from being included in determination of cost-of-goods-sold or compensation subtractions); *cf.* Fed. Rev. Rul. 59-92 (Jan. 1, 1959) (setting forth principle that "where a taxpayer receives funds burdened by an obligation to be expended for a specific purpose and earmarked for such purpose, the funds so held do not constitute gain or income to the taxpayer"). Although not directly stated, the majority opinion apparently avoids considering the total-revenue issue on the

basis that it would be "advisory" to consider the matter in light of the parties' concession that the result would be the same in this case regardless of whether the disputed revenue were actually excluded from total revenue (in whole or part).[1]  I believe this approach disregards the order of operations dictated by the statute.

"The distinctive feature of an advisory opinion is that it decides an abstract question of law without binding the parties." *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993); *see also State Bar of Tex. v. Gomez*, 891 S.W.2d 243, 245 (Tex. 1994) (advisory opinion is one not binding on parties); *Black's Law Dictionary* 1125 (9th ed. 2009) (defining "advisory opinion" as "[a] nonbinding statement by a court of its interpretation of the law on a matter submitted for that purpose").  Under the plain language of the franchise-tax statute, matters implicating total revenue are necessarily antecedent to the COGS subtraction issue as presented in this case.  Moreover, the issue of excluding flow-through payments from total revenue is implicated in this case, and a decision interpreting that provision would indisputably bind the parties.  This is not a case in which the amount of funds to be included in Newpark's total-revenue calculation is undisputed.  To the contrary, the parties hotly contest what portion of the funds Newpark received is actually revenue that is taxable in the first instance.  Newpark contends that, by contract, it is merely a conduit for some funds paid to subcontractors, while the Comptroller maintains that Newpark does not meet the statutory requirements for excluding subcontractor payments from total

---

[1]  While the appellants assert that "[t]he resulting tax liability does not differ whether the subcontractor payments are treated as a revenue exclusion or part of a deduction," Newpark observes that the tax refund would be different depending on how the disputed issues are actually resolved except that the amount of any tax refund would be capped by the amount Newpark actually paid under protest, plus interest.

revenue. There is nothing hypothetical or abstract about this issue. Accordingly, although I agree with the result in this case, I fear that the majority opinion may be read to suggest that taxpayers or taxing authorities can calculate revenue and expenses in any order that is convenient for them in derogation of express statutory language. *Cf. Bell Helicopter Textron, Inc. v. Combs*, No. 03-10-00764-CV, 2011 WL 6938491, at *1-5 (Tex. App.—Austin Dec. 29, 2011) (mem. op.) (dispute concerning tax refund ignored plain language of statute that dictated sequence giving rise to accrual of tax obligations, penalties on underpayments, and interest on overpayments); *Carrollton-Farmers Branch Indep. Sch. Dist. v. JDP, Inc.*, 168 S.W.3d 184, 187-88 (Tex. App.—Dallas 2005, no pet.) (in denying refund of portion of penalties and interest calculated on incorrect appraised value, taxing authority failed to adhere to order of operations dictated by taxing scheme).

Under the franchise-tax statute, franchise taxes are assessed against each respective entity's "taxable margin." Tax Code § 171.002(a), (b). There are four methods of computing taxable margin, and those methods are characterized by the mutually exclusive subtractions authorized to be made from total revenue depending on the method selected: no subtractions under the E-Z computation method (Tax Code § 171.1016), a 30% general subtraction (Tax Code § 171.101(a)(1)(A)), a subtraction for cost of goods sold (Tax Code § 171.101 (a)(1)(B)(ii)(a)), or a subtraction for compensation (Tax Code § 171.101(a)(1)(B)(ii)(b)).[2] Taxable margin is the figure

---

[2] The E-Z computation method offers a potentially lower tax rate of 0.575 percent for taxpayers "whose total revenue from its entire business is not more than $10 million." Tax Code § 171.1016. However, a taxpayer electing this method "may not take a credit, deduction, or other adjustment" other than apportioning its gross receipts attributable to business in this state. *Id.*; *see also id.* § 171.106 (apportionment of margin to this state).

on which an entity's franchise-tax obligation is based, and all four methods of computing taxable margin require that total revenue be calculated as the first step. Once total revenue is properly calculated, the taxpayer may elect to make one of three general subtractions along with other adjustments, as applicable, before applying the tax rate, which is .5% for taxable entities primarily engaged in retail or wholesale trade and 1% for all others. *See, e.g.*, Tax Code §§ 171.0021, .106 (apportionment of margin to this state), .107 (deduction of cost of solar energy device), .108 (deduction of cost of clean coal project). In the alternative, if the taxpayer has less than $10 million in total revenue, the taxpayer may elect a lower tax rate of .575% in lieu of making any subtractions or adjustments other than apportionment of revenue between in-state and out-of-state business. *See id.* §§ 171.1016, .106. The tax obligation is then determined by multiplying taxable margin by the applicable tax rate and subtracting any credits or discounts. *See id.* § 171.0021 (discounts for small businesses). Taxpayers can choose any method of determining taxable margin that they qualify for and that results in the lowest tax obligation. *See id.* § 171.101(a) ("The taxable margin of a taxable entity is computed by . . . determining the taxable entity's margin, which is the lesser of [30% cap method, COGS subtraction method, or compensation subtraction method]."), .1016 (allowing certain taxpayers to elect to pay lower franchise-tax rate under E-Z computation method). According to the plain language of the statute, the amount of total revenue must be the same for all four methods of calculating taxable margin.

Although the majority opinion generally acknowledges the formula prescribed by the statute, including that the COGS subtraction must come after total revenue has been calculated, it does not further address this predicate legal issue. Along the way, the opinion states that the

4

taxpayer or taxing entity may choose, at its discretion, whether to exclude sums from total revenue or subtract them as part of the COGS or compensation subtraction and that the trial court in the present case therefore "*must* have concluded that Newpark was entitled to claim [all of] NES's expenses . . . in Newpark's overall cost-of-goods-sold deduction." *See Combs v. Newpark*, ___ S.W.3d ___, slip op. at 6 (emphasis added). The opinion also states that "*if* a taxable entity excludes flow-through payments to subcontractors from its total revenue, it cannot claim those same payments in its cost-of-goods-sold deduction." *Id.* at 5 n.2 (emphasis added); *see also id.* at 15 (phrasing revenue exclusion in discretionary terms while statute uses mandatory terms). The majority opinion also presumes, without analysis, that funds that are not considered to be part of the taxpayer's total revenue—i.e., funds that were not income or gain because the taxpayer was contractually obligated to hand those funds over to a third party—could nevertheless be properly considered and treated as the taxpayer's expenses. In my opinion, these statements are inconsistent with the statute's plain language because they treat the exclusion of flow-through payments from total revenue as discretionary rather than mandatory.

This is not just a theoretical distinction with no potential substantive impact. With respect to the COGS subtraction specifically, there is a 4% cap on the inclusion of indirect and administrative expenses along with a requirement that the total of such expenses be allocable to the acquisition or production of goods. *See* Tax Code § 171.1012(f). Ignoring the statutory order of operations creates a potential that the total indirect and administrative expenses could be inflated, resulting in an inflation of the amounts subject to the cap. It is difficult to conceptualize all the possible permutations of revenue, expenses, and allocations that could be affected by the failure to

5

follow the statutory order of operations. Although there appears to be no actual impact to the bottom line in this case, that does not justify proceeding in a manner different from what the statute requires.[3]

The COGS subtraction is not an "alternative legal theory" but is an *element* of Newpark's chosen method of computing taxable margin; it is not itself a separate theory of computing tax liability. Based on the wording of the franchise-tax statute, any determination of the amount of tax owed necessarily requires a determination of whether the flow-through funds are to be subtracted from total revenue—either they are excluded in whole or in part or they are not. Only if it is determined that they should not be subtracted from total revenue is it proper to consider whether such funds might be otherwise deductible. The relevant legal theory at issue here is the method of determining taxable margin using the COGS subtraction; while the amount of the COGS subtraction is an essential element of that theory, so is the antecedent calculation of total revenue.

I am concerned that we are ignoring the plain language of a statute simply because the parties say we can do so without impacting the result in a particular case.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Field

Filed: December 31, 2013

_____

[3] Newpark asserts in its brief that its tax liability would in fact vary depending on how the issues in this case are resolved, but any refund in this action would be capped at the amount of tax paid under protest.